## STATE v. J. O. HOWARD.

*Indictment, infant not liable to, for violation of contract.*

1. An indictment under the act of 1873–'74, ch. 31, for disposing of crops under mortgage cannot be sustained, where it appears that the defendant is an infant.   The alleged disposition was a disaffirmance of the contract and renders it void.

2. Though the act creating the misdemeanor, by its general terms, makes the defendant indictable for a violation of his contract, yet its operation is restricted by the common law which exempts him from the contract by reason of his infancy.

(*Freeman* v. *Bridger*, 4 Jones, 1; *Skinner* v. *Maxwell*, 66 N. C., 45, cited and approved).

INDICTMENT for misdemeanor tried at Fall Term, 1882, of PENDER Superior Court, before *Gilmer, J.*

The indictment was preferred under the act of 1873–'74, ch. 31, for disposing of crops at the time under the lien of a mortgage, given by the defendant to the prosecutor to secure advances.

It was admitted that at the date of the mortgage, and at the date of the alleged disposition and use of the corn raised by the defendant and under the lien of said mortgage, and also at the date of the indictment, the defendant was under the age of twenty-one years. There was no evidence of any ratification by the defendant of the mortgage after he arrived at full age.

The defendant asked the court to instruct the jury that the contract of the defendant being voidable, and the alleged removal occurring while he was still an infant, he was entitled to a verdict of not guilty. His Honor refused to give the instruction, and the defendant excepted. Verdict of guilty; judgment; appeal by defendant.

*Attorney-General*, for the State.
No counsel for defendant.

ASHE, J. It is well settled that an infant can make no binding contract except for necessaries, which include such things as his meat, drink, apparel, physic, nursing while sick, schooling, &c. But we have yet to find an authority for holding, that the business of farming falls within the exception to the exemption of an infant upon his contracts. Parsons in his work on Contracts (Vol. 1, page 313) says, an infant cannot enter into con-

tracts of business and trade, "for this," he says, "is not necessary and might expose him to the misfortune of entering upon adult life with the burdens of bankruptcy resting upon him."

In *Freeman* v. *Bridger*, 4 Jones, 1, which was an action brought against an infant to recover the value of timber furnished him to build a house on his land, it was held it was not a *necessary*. PEARSON, C. J., who spoke for the court, said : " If the infant was bound to pay for the timber, he must pay for the nails, glass, &c., the wages of the workmen ; in other words, for the whole house ; and if this be so on the ground that it is necessary for him to have a house to live in, it follows that he must pay for a horse, a plough, a wagon, &c., because such things are necessary to enable him to cultivate his land ; then would follow a few cattle and hogs ; so the result would be to make the exception broader than the general rule, and take from infants that protection which the law considers they stand in need of by reason of their want of discretion."

The contract in this case then, was not for a necessary.

But it is contended that an infant may bind himself upon his contract other than for necessaries, provided he ratifies it when he comes of age ; and on the other hand it is held that contracts of an infant are voidable, and such as relate to his person or personal property may be avoided at any time, even before attaining his majority, by an act clearly manifesting this purpose. Parsons, p. 322. In *Skinner* v. *Maxwell*, 66 N. C., 45, it is decided that when an infant purchases a stock of goods for the purpose of trade or merchandise, and to secure the purchase money executes a note and mortgage of the stock of goods, such contract is voidable, and may be disaffirmed by such infant by any act which manifests such purpose.

In this case, the disposition of the mortgaged crop by the infant in violation of the terms of the contract, was to our minds a clear and manifest purpose to disaffirm the contract, and when thus disaffirmed, the contract which before was only voidable becomes absolutely void. The case then results in this—that the state

seeks by this indictment to hold the defendant amenable to the criminal law for the violation of a void contract. With all due respect to the opinion of those who entertain such a proposition, we must say that it seems to us preposterous.

But it may be objected that the contract is only void by reason of the infancy of defendant, and that there is no saving in the act in favor of infants, &c. The act, it is true, is very broad in its terms and contains no saving clause, but it presents a case where there is a concurrence of two laws—the one a statutory provision making the defendant indictable for a violation of his contract, and the other a provision of the common law exempting the defendant by reason of his infancy from the contract, because as to him it was void. "Like two statutory laws," says Bishop, "they may stand well together up to a given point, and then they come in conflict. The rule in this case is that the prior law is not repealed, but at such point the one or the other simply gives way. For example, a statute general in its terms is always to be taken as subject to any exceptions which the common law requires. Then if it creates an offence, it includes neither infants under the age of legal capacity, nor insane persons," &c. Bishop on Statutory Crimes.

From this view of the case, our conclusion is that His Honor erred in refusing to give the instructions asked. This must, therefore, be certified to the superior court of Pender county, that a *venire de novo* may be awarded the defendant.

Error.                                                        *Venire de novo.*